UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF WISCONSIN

_____

In re

VISSION, INC.,

              Debtor.

_____

PAUL G. SWANSON, TRUSTEE

              Plaintiff,

v.

TRASINO PARK-HUDSONS, LLC, and
M&I MARSHALL & ILSLEY BANK,

              Defendants.

_____

TRASINO PARK-HUDSONS, LLC,

              Defendant, Cross-Claimant and
              Third Party Plaintiff,

v.

M&I MARSHALL & ILSLEY BANK and
JAMES STABILE and LISA STABILE,

              Cross-Claim Defendant and
              Third-Party Defendants.

Case No. 07-21957

Chapter 7

Adversary No. 07-2111

_____

MEMORANDUM DECISION ON M&I MARSHALL & ILSLEY BANK'S
MOTION TO DISMISS AND MOTION FOR SUMMARY JUDGMENT

_____

Before the court is the defendant M&I Marshall & Ilsley Bank's (hereinafter "M&I") motion to dismiss the trustee's cause of action against it and motion for summary judgment as to portions of Trasino Park-Hudson, LLC's (hereinafter "Trasino") cross-claim against it. At issue

are the conflicting legal rights of the creditors in the business assets of the debtor and proceeds from the sale of those assets.

This is a core proceeding under 28 U.S.C. § 157(b)(2)(K), and the court has jurisdiction under 28 U.S.C. § 1334. This decision constitutes the court's findings of facts and conclusions of law pursuant to Fed. R. Bankr. P. 7052.

## BACKGROUND

The debtor in this case, Vission, Inc., is a Michigan corporation organized on November 12, 2004, and registered as a foreign corporation doing business in the State of Wisconsin with the Department of Financial Institutions on April 13, 2005. Vission operated a franchise restaurant known as Hudson's Classic Grill in Grand Chute, Wisconsin, from June 2005 through November 2006.

On April 14, 2005, the defendant, Trasino, advanced approximately $250,000.00 to the debtor for the purchase of equipment and, pursuant to a General Business Security Agreement, received a security interest in all of the personal property of the debtor. Trasino, as landlord, also entered into a commercial lease with the debtor, as tenant. On May 27, 2005, Trasino filed a financing statement with the Wisconsin Department of Financial Institutions, Document No. 050007997234. *See* Proof of Claim No. 1 Attachments, filed April 18, 2007.

Subsequent to borrowing money from Trasino, on April 22, 2005, the debtor executed a Commercial Security Agreement with M&I Bank for $130,000.00 in which the debtor pledged all of its personal property as collateral for the loan. Simultaneously, James and Lisa Stabile, principals and 100% stockholders of the debtor, executed a $130,000.00 second mortgage on their home as security for the business loan. *See* Proof of Claim No. 12 Attachments, filed July

2

Case 07-02111-mdm    Doc 30    Filed 05/28/08    Page 2 of 14

23, 2007. The debtor ceased business operations around November 2006. On December 21, 2006, M&I Bank perfected its security interest by filing a financing statement with the Michigan Department of State, Document No. 2006211081-9. *See* Proof of Claim No. 12 Attachments, filed July 23, 2007. On January 22, 2007, Trasino filed a financing statement with the Michigan Department of State, Document No. 2007011973-0, within 90 days of the filing of the bankruptcy petition. *See* Proof of Claim No. 1 Attachments, filed April 18, 2007.

Trasino filed an unsecured proof of claim in the amount of $1,907,499.82,[1] and reserved the right to litigate whether $264,535.82 of the claim was secured. *See* Proof of Claim No. 7 Addendum, filed May 14, 2007. M&I Bank filed a secured proof of claim in the amount of $38,812.70. *See* Proof of Claim No. 12, filed July 23, 2007.

The chapter 7 trustee brought this adversary proceeding under 11 U.S.C. §§ 544(a) and 547 to avoid the liens of both M&I Bank and Trasino. According to the complaint, at the time M&I perfected its security interest in Michigan, it had actual knowledge and notice of the debtor's previous pledge of all of its assets to Trasino, and this made M&I's lien avoidable. The trustee also alleged that Trasino failed to perfect is security interest in the debtor's personal property in the proper forum, Michigan, until after the commencement of the preference period. The trustee originally requested the following relief: for the avoidance of Trasino's lien; for preservation of the avoided lien for the benefit of the estate; for a determination of the priority of the avoided lien and that of M&I Bank; and for whatever further relief the court deemed equitable. Although avoidance of M&I's lien is not in the prayer for relief, the body of the

---

[1] $1,642,964.00 of the claim was for damages under the broken lease agreement. *See* Proof of Claim No. 7 Addendum, filed May 14, 2007.

complaint implies this is requested.

At a pretrial conference, the trustee withdrew his request for some of the relief requested in the complaint (the record is ambiguous as to what, exactly, and the trustee has not withdrawn any claims in writing, nor has he filed a brief explaining his position). Nevertheless, the trustee's lack of response to the bank's dispositive motion for dismissal leaves little doubt that he no longer intends to pursue avoidance of M&I's lien, nor to request priority over M&I on behalf of the bankruptcy estate.[2] The remaining relief requested by the trustee is for the avoidance of Trasino's lien and for whatever further relief the court deems equitable.

Trasino answered the complaint and asserted a first lien and perfected security interest in all personal property of the debtor. Trasino alleged M&I Bank knew about the former's loan and had communications with the debtor wherein the bank agreed to perfect its security interest and the debtor agreed to withhold the filing of its bankruptcy petition for at least 90 days after the perfection of the security interest. The bankruptcy was filed 92 days after M&I's perfection. Trasino also filed a cross-claim against M&I Bank and third-party defendants James and Lisa Stabile, principals and 100% stockholders of the debtor. Because M&I had taken a contemporaneous second mortgage real estate lien in the homestead real estate of James and Lisa Stabile, Trasino argued the bank should first seek collection on its indebtedness from that lien. Trasino also requested the court make a finding that Trasino may at a later date, post-discovery, bring a claim against the debtor, M&I Bank and any other parties thereto who knowingly formed or participated in a plan which would act to the detriment of Trasino.

---

[2]Trasino, on the other hand, opposed the dismissal of M&I Bank from the adversary proceeding as it filed a cross claim against M&I.

4

M&I Bank answered the complaint, alleging its lien was a valid, first priority security interest in the debtor's business collateral, notwithstanding any knowledge of the debtor's transaction with Trasino. As to the cross-claim by Trasino, M&I sought dismissal. According to M&I, knowledge is irrelevant under the Uniform Commercial Code with respect to priority and perfection of security interests. Trasino's lien, once voided as a preference, cannot then be elevated to a valid lien with a higher priority than a properly perfected and unavoided lien. M&I filed a motion to dismiss the cause of action by the trustee and a motion for summary judgment as to portions of the cross-claim brought by Trasino.

James and Lisa Stabile answered the cross-claim and sought dismissal of the claims against them. The parties were given an opportunity to set forth their legal arguments, and briefs were filed by M&I Bank and Trasino.

## ARGUMENTS

Because the trustee failed to pursue avoidance of the M&I lien or a determination of the priority of Trasino's avoided lien vis a vis the lien of M&I Bank, the bank argues the cause of action against it should be dismissed. M&I also moved to dismiss, with grounds of failure to state a claim and lack of jurisdiction, Trasino's request that the court make a finding that Trasino may at a later date, post-discovery, bring a claim against the debtor, M&I Bank and any other parties thereto who knowingly formed or participated in a plan which would act to the detriment of Trasino.

M&I further argues Trasino has no legal basis for asserting a first position security interest in the debtor's business assets over M&I's prior perfected security interest. Trasino filed its financing statement in the correct state of Michigan within 90 days of the bankruptcy filing

5

and the trustee has moved to avoid that lien. In Wisconsin, a race-to-notice state under the Uniform Commercial Code, conflicting perfected security interests rank according to priority in time of filing or perfection. Wis. Stat. § 409.322(1)(a). It makes no difference whether the secured party knew of the other security interest at the time it perfects its own security interest. *See Muggli Dental Studio v. Taylor*, 142 Wis. 2d 696, 419 N.W.2d 322 (Ct. App. 1987). The financing statement filed first, in this case M&I's, will take priority over subsequently filed statements regardless of the date on which the security interest was granted under section 409.322(5), Wis. Stat.

Trasino argues the court should order the marshaling of assets as a benefit to all unsecured creditors. This case satisfies the traditional elements of marshaling, which are: (1) the existence of two creditors of the same debtor (Trasino and M&I Bank); and (2) the existence of two funds belonging to a common debtor (the business assets and the principals' mortgaged homestead); with (3) only one of the creditors (M&I Bank) having access to both funds; and with (4) the absence of prejudice to the senior secured creditor (M&I Bank) if the doctrine is applied. *See In re Wm. Pietsch Co.*, 200 B.R. 207, 210 (Bankr. E.D. Wis. 1996). According to Trasino, equity in the Stabiles' home, less the first mortgage obligation, may be as high as $121,000. Trasino argues there will be no prejudice to M&I Bank if the trustee holds the proceeds from the sale of the debtor's business equipment until a foreclosure proceeding on the principals' house is concluded. In this case, the debtor's principals pledged their house as collateral to gain working capital from M&I Bank. If marshaling is ordered, only the principals will sustain a loss. It was foreseeable that the Stabiles, who had the most to gain if the debtor's business succeeded, also should bear the consequences if the business failed. *See also Matter of Multiple Servs. Indus.*,

6

Inc., 18 B.R. 635, 636 (Bankr. E.D. Wis. 1982) (ordering bank to marshal its security in second mortgage to satisfy claim); *Moser Paper Co. v. North Shore Publ'g Co.*, 83 Wis.2d 852, 266 N.W.2d 411 (1978) (holding where officers of insolvent corporation had pledged their residences to secured debt of corporation, equity of mortgaged residences was not property of different debtor so as to make doctrine of marshaling of assets inapplicable).

Trasino also argues that the Stabiles and M&I conspired to time the filing of the debtor's petition so that the perfection of the latter's lien was outside the 90-day preference period. Trasino points out that the debtor ceased operations in November 2006; however, it waited four months before filing its bankruptcy petition, exactly 92 days after the bank filed its UCC financing statement in Michigan. The "timing" of the bankruptcy filing was for the sole benefit of M&I Bank and the Stabiles and to the detriment of all of the debtor's other creditors, with the result that M&I will receive $40,000 from the debtor's equipment sale, M&I will not become a unsecured creditor of the debtor, M&I does not have to foreclose on the Stabiles' mortgage to receive payment on its debt, the Stabiles retain $40,000 in home equity, and $40,000 is lost from the debtor's estate.

M&I Bank rebuts[3] the arguments of Trasino, asserting any detriment to Trasino was self-

---

[3]M&I Bank asked the court to strike Trasino's brief as untimely. Because the one-week delay in the mailing of Trasino's brief to opposing counsel did not cause M&I to suffer any measurable prejudice, M&I's request is denied.

M&I also asked the court to strike the affidavit of Trasino's counsel because he is not a fact witness. *See* Fed. R. Civ. P. 56(e) ("affidavit must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated"). Striking the affidavit is not necessary at this time, as not all affidavits of counsel are prohibited. The Wisconsin Supreme Court Rules of Professional Conduct for Attorneys require candor toward the tribunal. *See* SCR 20:3.3 ABA Comment [3] ("an assertion purporting to be on the lawyer's own knowledge, as in an affidavit by the lawyer or in a

7

inflicted. Deciding when to file a bankruptcy case is an act of free volition and the clear prerogative of the filing party. According to M&I, Trasino should have moved the court to order marshaling of assets in a separate motion. Additionally, marshaling is not warranted because there are not two funds of assets belonging to the debtor. M&I would be prejudiced by having to foreclose on the Stabile's second mortgage by way of paying out the first mortgage holder, as well as marketing and other transaction costs.

## DISCUSSION

A motion to dismiss a cause of action will be granted by the bankruptcy court where, based upon the pleadings, it appears that the complaint does not allege enough facts to state a claim for relief that is plausible on its face. *Limestone Dev. Corp. v. Village of Lemont*, 520 F.3d 797, 803 (7th Cir. 2008). When considering a motion to dismiss, the court tests the sufficiency of the complaint, not the merits of the suit. *Reed v. City of Chicago,* 77 F.3d 1049, 1051 (7th Cir. 1996). In considering a motion to dismiss, the court must accept all pleaded facts as true and draw all reasonable inferences in a light most favorable to the non-moving party; nonetheless, in order to withstand a motion to dismiss, the complaint must allege facts sufficiently setting forth essential elements of the cause of action. *Coates v. Illinois State Bd. of Ed.*, 559 F.2d 445, 447 (7th Cir. 1977).

---

statement in open court, may properly be made only when the lawyer knows the assertion is true or believes it to be true on the basis of a reasonably diligent inquiry"). An attorney should be wary of signing an affidavit because counsel generally should not act as an advocate at a trial in which he or she is likely to be a necessary witness. An exception may be made if the testimony relates to an uncontested issue. *See* SCR 20:3.7. By signing the affidavit, counsel runs the risk of becoming a fact witness, and any future hope of asserting privilege may disappear or counsel may be disqualified from representing a client. Those specific concerns are not presently before the court, however.

M&I Bank has moved to dismiss the trustee's causes of action against it. At a pretrial conference, the trustee appeared to concede M&I's knowledge of the prior grant of an improperly perfected security interest did not state a legal basis for avoidance, and he has not pursued it. Even though this withdrawal was never reduced to writing, the trustee's lack of response to the bank's dispositive motion for dismissal, and the lack of discernable merit to this position, leaves the court without doubt that he no longer intends to assert priority over M&I's unavoidable perfected lien. M&I's motion to dismiss the trustee's causes of action against it is granted.

M&I Bank also seeks dismissal of Trasino's request in its cross-claim to bring an action at a later date regarding an alleged conspiracy between M&I Bank and the Stabiles. This request is granted. The court is unaware of any authority by which it may preserve a cause of action on behalf of a party, especially a nondebtor, and Trasino does not provide us with any.

As to Trasino's cross-claim against M&I, summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23, 106 S.Ct. 2548 (1986).

M&I Bank seeks summary judgment dismissing Trasino's cross-claim that M&I's security interest is subordinate to Trasino's security interest. The security agreement between the debtor and Trasino dated April 4, 2005, provides that it is to be interpreted according to the laws of Wisconsin. Except for the proper place to perfect a security interest, which the parties agreed was Michigan, no party has argued that Michigan law should be applied with respect to issues in dispute, including the effect of perfection. In Wisconsin,

9

> Conflicting perfected security interests and agricultural liens rank according to priority in time of filing or perfection. Priority dates from the earlier of the time a filing covering the collateral is first made or the security interest or agricultural lien is first perfected, if there is no period thereafter when there is neither filing nor perfection.

Wis. Stat. § 409.322(1)(a). The subjective knowledge of a secured creditor with regard to another's conflicting security interest is irrelevant; the first to perfect prevails. UCC § 9-322, cmt. 4, ex. 2. Even if equity were to dictate a finding that Trasino's security interest was superior to that of the bank, this court holds such a ruling would not be appropriate. As noted by a Wisconsin appellate court:

> One purpose of the UCC filing requirements is to provide uniformity and stability in the marketplace. Fashioning equitable solutions to mitigate the hardship of those requirements on particular creditors undermines that purpose. The benefit to particular creditors from relaxing the filing requirements does not, in our view, justify the uncertainty and inconsistency that would result from such an approach.

*Smith and Spidahl Enters., Inc. v. Lee*, 206 Wis.2d 663, 673, 557 N.W.2d 865, 870 (Ct. App. 1996) (citation omitted). Summary judgment is granted in favor of M&I Bank; its security interest is not subordinate to Trasino's security interest, as a matter of law.

M&I Bank also opposed Trasino's request for marshaling of assets. The doctrine of marshaling typically is invoked against a senior lienholder to prevent that creditor from exercising a right of recourse against the property or assets of a debtor in an unreasonable manner or so as to satisfy its claim to the exclusion of the junior claimants. *See Meyer v. United States*, 375 U.S. 233, 237, 84 S.Ct. 318, 321 (1963); *Sowell v. Federal Reserve Bank*, 268 U.S. 449, 456-57, 45 S.Ct. 528, 530 (1925).

M&I argues that Trasino should have raised the doctrine of marshaling in a separate motion. The court is unpersuaded by this argument and finds that Trasino acted prudently by

10

asserting the marshaling doctrine at this time:

> The junior creditor acquires the right to have the common debtor's assets marshaled by taking proper steps to have the doctrine enforced; the right does not exist as does a lien or a vested interest. It is merely a principle which is to be administered when it has been invoked, and it is inchoate until asserted and proceedings have been taken to make it effectual. Until the steps are done it is subject to displacement and defeat by subsequent liens upon the funds.
>
> The invocation of the doctrine of marshaling is thus dependent upon a seasonal assertion of right by the junior lienholder. By failing to raise the question of marshaling promptly, the right to invoke the doctrine may be waived, or lost through laches. Thus, if a junior encumbrancer knows that a senior claimant contemplates selling doubly charged property, but does nothing to prevent the sale, the junior lienor may not claim the right to have the debtor's assets marshaled.

53 Am. Jur. 2d Marshaling Assets § 10 ($2^d$ Ed., as updated 2008) (citations omitted). If Trasino had waited to file a separate motion or action for marshaling – after all the parties' respective lien rights were established, including those of the trustee – it could arguably have waived its right to invoke the doctrine.

As agreed by the parties, the elements of marshaling are: (1) the existence of two creditors of the same debtor; and (2) the existence of two funds belonging to a common debtor; with (3) only one of the creditors having access to both funds; and with (4) the absence of prejudice to the senior secured creditor if the doctrine is applied. *In re Wm. Pietsch Co.*, 200 B.R. 207, 210 (Bankr. E.D. Wis. 1996) (citing *Meyer v. United States*, 375 U.S. at 236-37, 84 S.Ct. at 320-21).

The parties do not dispute the existence of two creditors of the same debtor. M&I Bank, however, argues there are not two funds of assets belonging to the debtor because the Stabiles' residence was not an asset of the debtor, but rather the mortgage was given to secure the personal guarantees of the Stabiles. The mortgage does not directly secure the debt of the debtor, as was

11

the case in *Wm. Pietsch Co.*, 200 B.R. 207, and *Multiple Services Indus.*, 18 B.R. 635.

In the corporate context, marshaling has traditionally been allowed even though the common-debtor rule has not been met in only two situations: (1) where the corporate veil could properly be pierced so as to ignore the ostensibly separate identities of a shareholder and the corporation; and (2) when a shareholder's property should be deemed to be a contribution to the capital of a corporation. But as this court previously noted, "[e]ven the rule that recovery from a guarantor will not be compelled before resorting to the debtor's assets is not absolute." *Wm. Pietsch Co.*, 200 B.R. at 210. A corporation's guarantor's property, pledged to secure a corporate obligation but not solely the guarantor's obligation, may be regarded as contribution to the capital of the corporation and thus subject to marshaling. *Id.* at 210-11 (citing *Farmers and Merchants Bank v. Gibson*, 7 B.R. 437, 440 (Bankr. N.D. Fla. 1980), *vacated and remanded*, 81 B.R. 79 (N.D. Fla. 1981)). The bank's argument that there are not two funds of assets belonging to the debtor because the Stabiles' residence was not an asset of the debtor thus is not determined as a matter of law.

The bank also asserts it would suffer prejudice if the doctrine is applied. The doctrine is never applied, and may not be invoked, to bring about an unjust or inequitable result or to work substantial injustice or injury to any party in interest. Prejudice to M&I Bank is an issue of fact in dispute, precluding summary judgment on this particular aspect of Trasino's request for marshaling.

M&I further argues that Trasino does not have standing to assert the doctrine once its lien is avoided. The doctrine of marshaling of assets or securities generally may be invoked only by a secured creditor. *See* 53 Am. Jur. 2d Marshaling Assets § 18 (2$^d$ Ed., as updated 2008) (citations

omitted). The doctrine, however, is not so limited in all cases. Marshaling has been extended in some jurisdictions to cases where some person other than a secured creditor has an interest in a portion of the property which a creditor may subject to the payment of his debt, as in the case of a purchaser who has acquired the debtor's interest in property subject to a mortgage or other lien or one who has an equitable lien under an agreement to give a mortgage, as against judgment creditors of the debtor. *Id*. While Trasino does not have such an interest, its standing cannot be rejected as a matter of law. Furthermore, at this point in the case, Trasino's status as a secured creditor remains unavoided.

Because the trustee has not moved for summary judgment, the issue of avoidance of Trasino's lien and its preservation for the benefit of the estate is not ripe at this time. In the event Trasino's lien is ultimately avoided, there is a question of whether it would still have standing to seek marshaling of assets. The court in *In re Hale*, 141 B.R. 225 (Bankr. N.D. Fla. 1992), permitted unsecured creditors to invoke the doctrine of marshaling by treating them as lien creditors. On the other hand, were the trustee to stand in the shoes of Trasino, he may be the only party having standing to invoke the doctrine. Although there is a split of authority as to the effect of a bankruptcy trustee's status as a hypothetical lien creditor under the strong-arm provision of the Bankruptcy Code, this court has previously held that a trustee has standing as a lien creditor to seek marshaling. *See In re Wm. Pietsch Co.*, 200 B.R. 207 (Bankr. E.D. Wis. 1996).

## CONCLUSION

Accordingly, M&I Bank's motion to dismiss the trustee's cause of action to avoid its lien and determine its priority is granted. The bank's motion to dismiss Trasino's request in its cross-

claim to bring an action at a later date regarding an alleged conspiracy between M&I Bank and the Stabiles is also granted.  Summary judgment is granted to M&I Bank, in part, and the portion of Trasino's cross-claim against M&I seeking priority of Trasino's lien over the bank's is dismissed.  M&I Bank's motion for summary judgment dismissing Trasino's cross-claim regarding the  marshaling of assets is denied, and this matter is preserved for trial.  A separate order consistent with this decision will be entered.

May 28, 2008

Margaret Dee McGarity
Chief Judge, U.S. Bankruptcy Court

14

Case 07-02111-mdm    Doc 30    Filed 05/28/08    Page 14 of 14